UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

DENISE M. GIBBS,

    Plaintiff,

v.                                                      C.A. No. 09-cv-392-ML

BROWN UNIVERSITY IN PROVIDENCE
IN THE STATE OF RHODE ISLAND
AND PROVIDENCE PLANTATIONS

    Defendant.

## MEMORANDUM AND ORDER

In this employment discrimination action, Plaintiff claims that she was subjected to disparate treatment, a hostile work environment, and retaliation on account of her race in violation of 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 2000e-2 ("Title VII"), and R.I. Gen. Laws § 28-5-7 ("FEPA"). Defendant has moved for summary judgment as to all counts. Fed. R. Civ. P. 56.

### I. Facts

Plaintiff, Denise Gibbs ("Gibbs"), is an African-American woman who began working at Brown University ("Brown") in 1993. During all relevant periods, Gibbs was employed full-time in the Records Department of the Admissions Office where she worked with two other full-time employees, Tina Creamer ("Creamer") and Cheryl Degnan ("Degnan"). Pl.'s Aff. ¶¶ 3-6. Creamer is Asian-American and Degnan is Caucasian. Pl.'s Aff. ¶¶ 11-12. Gibbs was the only African-American in the work group.

1

In 2006, there was a change in supervisors and Mary Cummings ("Cummings") took charge of the Admissions Office. Gibbs alleges that her job duties changed when Cummings took over and that "it became clear that she did not like [minorities] . . . and treated us differently than the other people she supervised." Pl.'s Aff. ¶ 11. Gibbs alleges that she was stripped of some job duties that she had performed under previous supervisors and that she was effectively demoted. She also alleges that she was discriminated against when Cummings promoted Degnan to the newly created position of Coordinator.

Following Degnan's promotion, Gibbs alleges that both Cummings and Degnan made supervisory decisions that discriminated against her because of her race. She alleges that overtime hours and vacation time were allocated in a discriminatory manner. In addition, Gibbs claims that Brown discriminated against her with regard to her pay grade.

Gibbs also alleges a number of incidents in which Cummings and Degnan treated her in such a manner as to create a hostile work environment. She recounts one such incident that occurred on November 7, 2007,[1] when Degnan forwarded to employees in the Records Department, including Gibbs, an email entitled "SOMEONE FINALLY SAID IT." Nov. Email 000337, Docket No. 24-3.

In February of 2008, Gibbs discussed the November 7, 2007, email with Henry Johnson ("Johnson") who worked in Brown's human resources department ("HR"). Gibbs alleges that Cummings and Degnan then retaliated against her for meeting with HR. She cites three instances

---

[1] Gibbs alleges that the email was sent on November 7, 2007. See Pl.'s Aff. ¶ 28; Pl.'s Opp'n 5 (incorrectly stating that the incident occurred in 2006). The email itself, however, indicates that it was "Sent" November 9, 2007. Nov. Email 000337, Docket No. 24-3. The discrepancy does not affect the Court's analysis, and, for the sake of consistency, the email will be presumed to have been sent on November 7, 2007, for the purposes of this order.

of retaliatory conduct: (1) she alleges that she was reprimanded for being late to work and that she was told that she would have to be at her desk working by 8:30 am; (2) she alleges that she was excluded from an offer of overtime; and (3) she alleges that employees in the Processing Department who worked on the second floor were treated more favorably than employees in the Records Department who worked on the first floor.

Gibbs's claims are brought under three different statutes: 42 U.S.C. § 1981 ("§ 1981"), 42 U.S.C. § 2000e-2 ("Title VII"), and R.I. Gen. Laws § 28-5-7 ("FEPA"). As an initial matter, this Court notes that the prima facie elements of Title VII and § 1981 employment discrimination claims are the same and claims under both statutes are analyzed under the McDonnell Douglas burden-shifting framework. See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001). For FEPA claims, Title VII and the "McDonnell Douglas case provide[] the appropriate framework for evaluation of an employment discrimination case." Shoucair v. Brown Univ., 917 A.2d 418, 426 (R.I. 2007).

While the analysis of the claims is governed by McDonnell Douglas, each statute has a different statute of limitations. The statute of limitations for Gibbs's FEPA claim is one year. See Horn v. S. Union Co., 927 A.2d 292, 293 (R.I. 2007) (referencing R.I. Gen. Laws § 28-5-17(a)). Gibbs filed her claim with the Rhode Island Commission for Human Rights on June 2, 2008. Gibbs's FEPA claims are therefore limited to employment actions occurring after June 2, 2007. The statute of limitations for Gibbs's Title VII claims is 300 days. Lebron-Rios v. U.S. Marshal Service, 341 F.3d 7, 11 (1st Cir. 2003). Accordingly, Gibbs's Title VII claims are

limited to employment actions occurring after August 6, 2007.[2]  A four year statute of limitations is applied to race-based employment discrimination claims under § 1981. Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004).  Gibbs filed her complaint on August 26, 2009; therefore, her § 1981 claims are limited to employment actions occurring after August 26, 2005.

## II. Standard of Review

Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[3]  "A genuine issue exists where the evidence is sufficient for a reasonable trier of fact to return a verdict in favor of the nonmoving party."  Martinez-Rodriguez v. Guevara, 597 F.3d 414, 418 (1st Cir. 2010).  "[A] fact is material if it has the potential of determining the outcome of the litigation." Id. at 419 (quoting Maymi v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008)).

"[C]onclusory allegations, improbable inferences, and unsupported speculation" do not support summary judgment. Cortes-Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010). All reasonable inferences are drawn in favor of the nonmoving party and the court must

---

[2] Discrete acts such as termination and failure to promote, among others, are barred when they occur outside the limitations period but hostile work environment claims are different because they involve repeated conduct. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). For hostile work environment claims, a court may review events occurring outside the statute of limitations to determine liability. See id. at 117-18.

[3] On December 1, 2010, the language of section (c) of Rule 56 was slightly altered and it was moved to section (a). Brown's motion for summary judgment was filed on October 4, 2010, prior to this change, and is therefore determined according to the earlier Rule.

"scrutinize the evidence in the light most agreeable to the nonmovant[]." Ahern v. Shinseki, 629 F.3d 49, 53 (1st Cir. 2010). Where, however, "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III. Discussion

### A. Disparate Treatment Claims

To succeed on a disparate treatment claim, a plaintiff must first show that she "(1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was adversely affected; and (4) was replaced by another with similar skills and qualifications." Thomas v. Eastman Kodak Co., 183 F.3d 38, 56 (1st Cir. 1999). Upon a plaintiff making this prima facie showing, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment action. See id. Once the defendant has made such a showing, the burden then shifts back to the plaintiff to prove that the defendant's articulated reason is merely pretext for discrimination. See id.

Gibbs alleges several adverse employment actions including: denial of overtime, failure to promote, demotion, discriminatory allocation of vacation days, and disparate wages. The Court addresses these claims in turn.

i. Overtime[4]

Gibbs alleges that she was denied overtime opportunities on account of her race. Brown's personnel records indicate that, between 2005 and 2008, Degnan worked a total of 260 overtime hours while Gibbs worked 194.5 overtime hours. Bengochea Aff. ¶ 10, Docket No. 26-1. Gibbs argues that this disparity in the number of overtime hours worked supports her claim.

To be successful on a disparate treatment claim, an "employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or (2) withhold from the employee an accouterment of the employment relationship." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) (citation omitted). A denial of overtime may qualify as an adverse employment action so long as it results in a material disadvantage. See Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) ("Whether an employment action is materially adverse . . . is gauged by an objective standard.").

Brown argues that Gibbs cannot claim disparate treatment because she had the second highest number of overtime hours within the department. Yet, Gibbs worked in a small office with only two other full-time employees, and she states that the "core of the records department staff at all times relevant . . . was Cheryl Degan, Tina Creamer and Plaintiff." Pl.'s Opp'n 25-26. Comparing Gibbs's overtime hours to part-time employees or to the office at large is not probative because, as Gibbs argues, "the primary responsibility for intake remained with the Records Department staff and it was they who received the bulk of the overtime." Pl.'s Opp'n 26. Further narrowing the field, Gibbs

---

[4] The overtime claims are all timely under § 1981. Under FEPA, Gibbs's overtime claims are limited to incidents occurring after June 2, 2007. Under Title VII, Gibbs's overtime claims are limited to incidents occurring after August 6, 2007.

6

alleges that only she and Degnan were generally interested in working overtime. Accordingly, with such a small and potentially skewed data set, a cross-section of overtime hours within the department is of questionable value both as support for Gibbs's claim and as argument against it.

Brown further argues that it was impossible for it to have discriminated against Gibbs because there were occasions when she turned down overtime. Brown, however, does not quantify the number of times that Gibbs declined overtime opportunities. Gibbs acknowledges that there were occasions when she declined overtime. The number of overtime hours worked, however, does not establish that overtime *opportunities* were offered in a nondiscriminatory manner. Gibbs alleges, for instance, that Degnan and another employee were allowed for a period of time to come into work early and receive overtime compensation for that work while, at the same time, Gibbs was told that no overtime was available. Brown Discrimination Compl. Form 000322, Docket No. 24-1.

Gibbs has presented a prima facie claim of employment discrimination with regard to her opportunity to work overtime, and Brown has not offered a legitimate nondiscriminatory explanation that accounts for the discrepancy. Brown's motion for summary judgment therefore must be denied as it relates to this claim.

### ii. Failure to Promote[5]

On May 1, 2006, Cummings promoted Degnan to the position of Coordinator. To make out a failure to promote claim, a plaintiff must show that she "(i) is a member of a protected class who (ii) was qualified for an open position for which she applied, but (iii) was rejected (iv) in favor of

---

[5] The alleged failure to promote occurred in 2006. This claim is therefore time-barred under Title VII and FEPA but may proceed as a timely claim under § 1981.

someone possessing similar qualifications." Rathburn v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004). Gibbs admits that she "did not apply for the position." Pl.'s Aff. ¶ 20. This admission is fatal to her claim. Brown's motion for summary judgment is accordingly granted on this claim.

iii. Demotion[6]

Under previous supervisors, Gibbs "distribut[ed] work assignments[,] . . . train[ed] student workers and train[ed] temporary workers." Pl.'s Aff. ¶ 6. Gibbs alleges that Cummings stripped her of these job duties and then gave them to Degnan. Pl.'s Aff. ¶ 8. The duties were allegedly first shifted to Degnan and then later were incorporated into the Coordinator position to which Degnan was promoted. Degnan's new position included a higher pay grade. Gibbs also alleges that she was moved to a smaller desk at some point. Pl.'s Aff. ¶ 9.

In order for a change in job assignments to qualify as an adverse employment action there must be a material change in job responsibilities. Gu v. Boston Police Dept., 312 F.3d 6, 14 (1st Cir. 2002). "An 'adverse employment action' is one that 'affects employment or alters the conditions of the workplace.'" Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 61-62 (2006)). "To be adverse, an action must materially change the conditions of [a] plaintiff[']s[] employ." Gu, 312 F.3d at 14. Mere displeasure with an employer's actions is not sufficient. Id. Rather, an employee must be materially disadvantaged. Id. Additionally, amidst general reorganization, the loss of some responsibilities is not an adverse employment action where the "essential job remain[s] unchanged" and there is no

---

[6] The alleged demotion occurred in 2006. This claim is therefore time-barred under Title VII and FEPA but may proceed as a timely claim under § 1981.

8

change in salary or grade. See id.; cf. Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23-24 (1st Cir. 2002) (stating that there is no "bright line rule that . . . an 'adverse employment action' [must] . . . result[] in a diminution in salary.").

The crux of Gibbs's argument is that Brown constructively demoted her by taking away some of her job responsibilities, giving those job responsibilities to someone else, and then paying that person more money for doing the same work. Gibbs argues that the "'Coordinator was to handle many of the same duties that [she] had handled" under prior supervisors. Pl.'s Opp'n 4. This new position, however, also entailed duties that Gibbs had not previously performed.

Gibbs has failed to establish that the conditions of her employment were materially altered. At all relevant times, Gibbs retained her position in the Records Department and her pay was never reduced. Her job title never changed and her core responsibilities as a full-time employee in the Records Department were unaltered. In addition, some of the job responsibilities that she allegedly lost were only sporadically assigned to her when the prior supervisors were away. Pl.'s Aff. ¶ 6. In this case, the loss of some job responsibilities, some of which were entirely peripheral, without any corresponding change in pay, did not amount to a material change in the conditions of employment. Cummings made some organizational changes to the office when she took over as supervisor but general restructuring, without a material change in job responsibilities, is not an adverse employment action. See Gu, 312 F.3d at 14. On these facts, the alleged loss of job responsibilities does not rise to the level of an adverse employment action.

The Court finds that Gibbs has failed to make a prima facie showing of a race-based demotion. Brown's motion for summary judgment is granted on this claim.

### iv. Vacation During Blackout Dates[7]

The Records Department is busiest between October and April. This stretch of time is referred to as the "Blackout Period," and Brown has a general policy of denying vacation during that timeframe. Gibbs alleges that at least one non-minority worker in the Records Department was permitted to take time off for Thanksgiving during the Blackout Period. Brown, however, argues that "the Blackout period was not an ironclad rule" and that exceptions were often made. Def.'s Second Supp. Memo 3.

Disparate treatment claims cannot proceed where an employee has not suffered an adverse employment action. Gibbs cannot claim that she suffered an adverse employment action as a result of a non-minority being given a vacation day during the Thanksgiving holiday when she herself never requested time off during Thanksgiving. The record establishes that Gibbs and other employees were permitted, on occasion, to take vacation days during the Blackout Period. Gibbs herself was granted more vacation days than any other employee during the Blackout Period and she has provided no evidence that the allocation of vacation days was administered in a discriminatory manner.

Brown's motion for summary judgment is granted on this claim.

---

[7] Under § 1981, the alleged discriminatory application of vacation days claims are timely as to incidents occurring after August 26, 2005. Under FEPA, Gibbs's claims are limited to incidents occurring after June 2, 2007. Under Title VII, Gibbs's claims are limited to incidents occurring after August 6, 2007.

v. Disparate Wages[8]

Gibbs alleges that Brown discriminated against her with regard to her pay grade. In support of this claim, she argues that employees in the Processing Department had their pay grade increased from level 4 to level 5. Pl.'s Opp'n 27. Meanwhile, Gibbs, an employee in the Records Department, remained at level 4. The record, however, establishes that salary decisions were made at a departmental level and not on an individualized basis. Miller Dep. 10:3-11:14, Docket No. 24-9. The decision to elevate the pay level for employees in the Processing Department was made by the Personnel Department after it performed a job function analysis. Def.'s Mot. for Summ. J. 8. The Personnel Department conducted a similar review of the Records Department. Miller Dep. 10:3-18. Ultimately, the Personnel Department decided not to the raise the pay level for employees in the Records Department. Therefore, it cannot be said that Gibbs suffered an adverse employment action on account of her race when the employment action impacted the department as a whole. In addition, Gibbs cannot establish that Brown's nondiscriminatory explanation for the employment action is pretext because she has not shown that she was treated differently than similarly situated individuals. Her pay grade remained the same as similarly situated employees in the Records Department.

Brown's motion for summary judgment is granted as it relates to Gibbs's disparate wages claim.

---

[8] The record does not clearly establish the date on which the pay grade determination was made. It appears that the decision was made sometime in 2006. Miller Dep. 10:7-20. The claim is therefore timely under § 1981 and would be timely under Title VII by way of 42 U.S.C.A. §2000e-5(e)(3)(A).

11

B. Hostile Work Environment

To make out a prima facie claim of a hostile work environment, Gibbs must show:

(1) that [s]he is a member of a protected class; (2) that [s]he was subjected to unwelcome . . . racial harassment; (3) that the harassment was based upon . . . race; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that . . . racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Douglas v. J.C. Penney Co., Inc., 474 F.3d 10, 15 (1st Cir. 2007). "Whether an environment is hostile or abusive can be determined only by looking at all the circumstances." Landrau-Romero v. Banco Popular De P.R., 212 F.3d 607, 613 (1st Cir. 2000) (internal quotation marks removed).

Gibbs asserts that she was "excluded from social activities, treated with indifference or hostility, and . . . given less desirable work assignments." Pl.'s Am. Compl. ¶ 13. She also claims that she was spoken to in "harsh tones" and "demeaned . . . in front of coworkers." Pl.'s Aff. ¶ 48. Gibbs further alleges that Degnan was "bossy and rude" and would set her up to fail. Pl.'s Aff. ¶ 24. Rudeness and ostracism, however, standing alone, will not support a hostile work environment claim. Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006). Gibbs further alleges that Degnan would tell her to instruct student workers how to perform certain tasks but then Degnan would turn around and tell the student workers that Gibbs had instructed them incorrectly. Pl.'s Opp'n 4. Gibbs argues that Degnan "intentionally set me up to fail . . . . [She] would not inform me of changes in procedure." Pl.'s Aff. ¶ 24. In addition, she alleges that she "was verbally reprimanded for doing things that other employees were allowed to do." Pl.'s Am. Compl. ¶ 10.

In addition to these general allegations, Gibbs lists specific instances of allegedly

discriminatory conduct. She alleges that on February 11, 2008, Cummings "reprimanded [her] . . . because [she] arrived at work a few minutes late." Pl.'s Aff. ¶ 42. Gibbs goes on to allege that she was reprimanded and told to be at her desk working by 8:30 am while a non-minority employee was "a few feet away eating a breakfast burrito." Pl.'s Aff. ¶ 42. Gibbs further alleges that the next day a non-minority employee arrived to work after 8:30 am and was not reprimanded. Brown Discrimination Compl. Form 000322, Docket No. 24-1. Also in February 2008, Gibbs alleges that she was "volunteered" to cover the reception desk on the second floor and had to walk up and down the stairs several times a day with a bad knee "for cigarette breaks, lunch breaks or to move my car." Pl.'s Aff. ¶43.

In further support of her claim that the working environment consisted of severe and pervasive harassment, Gibbs alleges that she "never received a birthday card or cake" from Cummings. Pl.'s Aff. ¶ 13. In addition, she alleges that Degnan called her "stupid" for delaying scheduled knee surgery until after the Blackout Period. Pl.'s Aff. ¶ 41. In another example, Gibbs alleges that "office supplies were put under lock and key" and that she had to ask Degnan for paper clips and other items. Pl.'s Aff. ¶ 40.

Gibbs's alleged incidents of workplace harassment do not rise to the level of severe and pervasive conduct that would alter the conditions of employment. Courts must distinguish between "innocuous behavior and severely hostile or abusive conduct." Kosereis v. Rhode Island, 331 F.3d 207, 216 (1st Cir. 2003). Here, the alleged conduct is infrequent and facially devoid of racial animus. For example, although Degnan inappropriately called Gibbs "stupid," a fair reading of the comment indicates that the statement was in reference to Gibbs's decision to delay knee surgery and was not premised upon race. "[A]mbiguous remarks, tending to suggest animus . . . are insufficient, standing

alone, to prove an employer's discriminatory intent." Thompson v. Coca-Cola Co., 522 F.3d, 168 180 (1st Cir. 2008) (alteration in original) (discussing a hostile work environment claim within the context of Massachusetts law) (quoting Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996)). Similarly, the incidents involving office supplies and birthday cake are ambiguous and fail to allege harassing conduct that was directed towards Gibbs. First, Gibbs states only that Cummings "usually" celebrated employee birthdays with cards and cake but that she received neither. Pl.'s Aff ¶ 13. As to the supply closet, by Gibbs's own account, the policy affected the entire Records Department. Pl.'s Aff. ¶ 40. These alleged incidents lack a clear racial component but, even assuming that the acts were laden with cloistered racial animus, the alleged conduct is too intermittent, nonthreatening, and benign to rise to the level of severe and pervasive harassment that may be considered objectively offensive.

The verbal reprimand about being late and the move to the second floor were in close proximity to one another but there is no evidence to suggest that Gibbs was consistently reprimanded for being late or typically given more laborious work assignments than her co-workers. To the contrary, the move to the second floor does not appear to be overtly discriminatory or hostile in that it was temporary, intended to accommodate Gibbs's knee injury by allowing her to spend more time at her desk, and tied to a legitimate job duty that Gibbs and other employees were sometimes requested to perform. Also, Gibbs cannot argue that she was "forced" to take the stairs multiple times a day to partake in non-work-related activities. These allegations involve seemingly innocuous isolated acts that are rather tenuously connected to Gibbs's allegations of racial hostility.

The workplace is not shielded from every conceivable inequity and "those who labor in it are expected to have reasonably thick skins." Suarez v. Pueblo Intern., Inc., 229 F.3d 49, 54 (1st Cir.

2000). Gibbs's allegations thus far are not the kind of repeated verbal attacks, physical intimidation, or humiliations that, in the aggregate, support a hostile work environment claim. See Rosario v. Dept. of Army, 607 F.3d 241, 247 (1st Cir. 2010). Gibbs has, however, alleged two incidents that potentially support her hostile work environment claim.

On November 7, 2007, Degnan forwarded to Gibbs and other employees an email with the subject heading "SOMEONE FINALLY SAID IT." The email then began by saying "(And it's long over-due.) Proud To Be White." Nov. Email 000337, Docket No. 24-3. The email goes on to reference "African Americans, Mexican Americans, Asian Americans, Arab Americans, Native Americans, etc. . . . ." Id. It says in part, "You pass me on the street and . . . You Call me 'White boy,' . . . But when I call you Nigger, Kike, Towel head, Sand-nigger, Camel Jockey, Beaner, Gook, or Chink . . . You call me racist." Id. at 000337-38. Continuing in the same vein, the diatribe protests, "If we had a White Pride Day . . . You would call us racists." Id. at 000339.

In a second incident, occurring sometime during the 2008 presidential election campaign, Degnan interjected herself into a discussion among co-workers and "in a very snotty manner said that if Barack Obama was [sic] elected President he would be assassinated." Pl.'s Aff. ¶ 22(c). According to Gibbs, in connection with the same statement, Degnan said that "Obama would never be president because he was black." Brown Discrimination Compl. Form 000326. The Court now considers whether these two alleged incidents, either alone or connection with the other alleged incidents of racial harassment, support a hostile work environment claim. Degnan's inflammatory email is overtly racially offensive and her comment regarding President Obama has objectively offensive racial overtones. Indeed, these incidents support Gibbs's accusation that Degnan "lacks a filter" and exercises poor judgment. The email itself is undeniably objectionable in spite of its laughable

15

conclusion that "[t]here is nothing improper about this email." Nov. Email 000341.

"There is no precise formula for establishing sufficiently egregious conditions" to support a hostile work environment claim. Rosario, 607 F.3d at 246. In this case, neither incident involved physical intimidation and the comments were not repeated, nor were they directed specifically towards Gibbs. See Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84 (1st Cir. 2006) (finding that successful single-incident hostile work environment claims will typically involve unwanted physical contact). Rather, they were isolated comments made to anyone within earshot in the office. Isolated incidents of harassment will not support a hostile work environment claim unless the incident is of an extremely serious nature. See Rosario, 607 F.3d at 247 ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to a hostile work environment") (internal quotations omitted) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). The comment regarding the presidential election is the type of offhand utterance that, while lacking racial sensitivity, will not alone alter the conditions of employment. See Faragher, 524 U.S. at 787. What is left is the email that, while outrageous and offensive, was not directed specifically toward Gibbs as an individual. Taking the facts in the light most favorable to Gibbs, these two incidents, even taken together, are not of such an extremely serious nature that, without more, they rise to the level of an objectively hostile work environment.

Gibbs argues that "actions taken by Defendant against Plaintiff[,] although not obviously motivated by racism on their own, can be attributed to racial animus because of the overtly racist nature of the email." Pl.'s Opp'n 17. In essence, Gibbs asks the Court to construe all of her allegations of workplace harassment as racial harassment in light of the email and, therefore, to find that, in the aggregate, she has made out a hostile work environment claim. Harassing conduct that

16

is not explicitly racial in nature, where it undermines an employee's ability to perform her job, may be considered, along with the overtly abusive conduct, part of a hostile work environment claim. See Rosario, 607 F.3d at 247. In this case, the sending of the email is inexcusable and has no place in the work environment but, in the totality, when considered with Gibbs's other allegations of harassing conduct, the alleged conduct, taken together, does not demonstrate a work environment so permeated with discriminatory intimidation, ridicule, and insult that it is sufficiently severe or pervasive so as to create a hostile and abusive work environment. See Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006). When viewed as a whole, Gibbs's allegations fail to go beyond "the ordinary tribulations of the workplace." Rosario, 607 F.3d at 249 (quoting Faragher, 524 U.S. at 788). To recap, the intensity and frequency of the incidents do not rise to the level to make out a prima facie case.

In light of all the circumstances, the Court grants summary judgment in favor of Brown on Gibbs's hostile work environment claim.

### C. Retaliation

A prima facie case of retaliation is established where a plaintiff (1) engaged in protected conduct; (2) was subjected to an adverse employment action; and (3) has established a causal link between the adverse employment action and the protected conduct. See Prescott v. Higgins, 538 F.3d 32, 43 (1st Cir. 2008). An employment action is materially adverse when it would "dissuade a reasonable worker from making or supporting a charge of discrimination." Lockridge v. The Univ. of Me. System, 597 F.3d 464, 472 (1st Cir. 2010) (quoting Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 74, 81 (1st Cir. 2007)). An adverse action within the context of Title VII's retaliation provision

is broader than an adverse employment action within the context of Title VII's substantive antidiscrimination provision. See Ahern v. Shinseki, 629 F.3d 49, 55 (1st Cir. 2010).

Gibbs asserts that she engaged in protected activity in February 2008 when she complained to HR about the November email. Summ. J. Hr'g 30:25-31:3. Gibbs then made a complaint about the email to Brown's Equal Employment Opportunity/Affirmative Action Office on March 5, 2008. Pl.'s Opp'n 9. Gibbs left work for scheduled medical leave on March 10, 2008, and did not return to Brown afterwards as a result of complications arising from her medical condition. Gibbs filed a charge of discrimination with the Rhode Island Commission for Human Rights on June 2, 2008.

Gibbs has alleged three incidents of retaliation occurring in February and March 2008. In one such incident, occurring February 11, 2008, Gibbs claims that she was told by Cummings that she would have to rearrange her schedule so that she would not be late for work. Def.'s Mot. Summ. J. 4. In another incident, Gibbs claims that overtime was offered to other employees but that she was not offered the opportunity and that she was reprimanded on February 28, 2008, for questioning why she had not been offered overtime. Id. at 4-5. Finally, she claims that, in March, she witnessed staff on the second floor being treated in a more favorable manner than employees on the first floor and that they "stood around chatting about what they had done on their weekends until well past 8:30." Pl.'s Aff. ¶ 44.

Gibbs has failed to state a prima facie retaliation claim because she has failed to demonstrate that she was subject to any materially adverse action. First, Gibbs did not suffer an adverse employment action when she was instructed to come to work on time. That request related to job performance rather than retaliation and, even if it could somehow be construed as retaliatory, this single incident would not dissuade a reasonable employee from pursuing a charge of discrimination.

In addition, the overtime offer was directed to staffers and/or secretaries in the Processing Department. Gibbs, however, alleges that she was the only employee in the Records Department who was specifically excluded from the offer by name. Pl.'s Aff. ¶ 47. This allegation does not support her retaliation claim because Gibbs was excluded from an overtime offer that was not extended to employees in her department. Additionally, Gibbs's allegation as to the corresponding reprimand characterizes Cummings only as becoming "angry" instead of "giving . . . some explanation." Pl.'s Aff. ¶ 46. Gibbs fails to connect this interaction to retaliatory animus predicated upon her engagement in protected activity. As a final matter, the fact that first floor and second floor employees were allegedly treated differently does nothing to establish that Gibbs was retaliated against for having complained about the offensive email. In sum, the alleged employment actions were not adverse and, even if they were presumed to be so, aside from temporal proximity, there is no connection between the alleged adverse employment actions and any protected activity on Gibbs's part. Although close in time, it would not be reasonable for a jury to conclude, on these facts alone, that such actions were in fact retaliatory.

The Court grants Brown's motion for summary judgment in its favor as to Gibbs's retaliation claims.

### IV. Conclusion

Brown's motion for summary judgment is DENIED as to Gibbs's disparate treatment claim regarding the allocation of overtime hours. Brown's motion for summary judgment is GRANTED with regard to Gibbs's disparate treatment claims for failure to promote, demotion, discriminatory allocation of vacation days, and disparate wages. Summary judgment is

GRANTED in favor of Brown on Gibbs's hostile work environment claims and summary judgment is GRANTED in favor of Brown on Gibbs's retaliation claims.

SO ORDERED

*Mary M. Lisi*
Mary M. Lisi
United States District Judge
March 31, 2011